IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANIE BERTRAND,<br><br>    Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | Case No. 1:08-cv-00147-BAK (DLB)<br><br>MEMORANDUM AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>ORDER DIRECTING CLERK TO ENTER JUDGMENT IN FAVOR OF DEFENDANT MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF JANIE BERTRAND |

**BACKGROUND**

Plaintiff Janie Bertrand ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act ("the Act"). The matter is currently before the Court on the parties' briefs, which have been submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

**PROCEDURAL HISTORY**

On November 8, 2004, Plaintiff applied for SSI. (Administrative Record ("A.R.") 29, 352,

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On April 6, 2009, the actions was temporarily assigned to the Honorable Dennis L. Beck for all purposes.

1

353.) Plaintiff initially alleged disability beginning December 23, 2003 (A.R. 95) but later amended the date of onset to November 8, 2004, the protective filing date (A.R.11, 33.)  Plaintiff claimed to be disabled as a result of a back injury, lupus, lung disease, depression, Valley Fever, and a chemical imbalance. (A.R. 88.)  After Plaintiff's claim was denied initially and on reconsideration, Plaintiff requested a hearing before the James Mitchell, Administrative Law Judge ("ALJ"). (A.R. 88, 80, 26.)  On March 5, 2007, that hearing was conducted. (A.R. 31.)  Plaintiff appeared and testified as did Kenneth Ferra, vocational expert. (A.R. 361, 362.)  Plaintiff had the assistance of legal counsel throughout the hearing and, in fact, has been represented by an attorney in this matter since November 1, 2005. (A.R. 28-30.)  On September 21, 2007, the ALJ denied Plaintiff's applications for benefits. (A.R. 8-18.)  On November 29, 2007, the Appeals Council denied review. (A.R. 3-5.)  Plaintiff filed her complaint seeking judicial review of the Commissioner's final decision on January 28, 2008.

## STATEMENT OF RELEVANT FACTS

Plaintiff was born on July 20, 1959 and was forty-seven years old at the time of the administrative hearing. (A.R. 34.)  She could read, write and speak English and had a tenth grade education. (Id.)  Plaintiff did not have a general equivalency degree nor had she taken any college-level course work or vocational training. (Id., A.R. 35.)  Plaintiff had begun working when she was about sixteen years old, apparently at lower-skilled jobs. (A.R. 93-94.)  Her work history during the fifteen years prior to the hearing included jobs as a waitress, a cashier, a helper in a delicatessen, and a baker in a delicatessen. (A.R. 36-44.)  Her most recent job had ended in late December of 2003. (A.R. 45-46.) Plaintiff sought benefits as a result of alleged health problems she claimed had become disabling in November 2004.  According to her application for assistance, those problems included a back injury, lupus, lung disease, depression, Valley Fever, and a chemical imbalance.  (A.R. 88.)

The ALJ questioned Plaintiff at some length about her allegedly disabling conditions, her subjective complaints, the treatment she received for those conditions and symptoms throughout the period in question, the effectiveness of that treatment, and the degree of impairment in the areas of basic work-related functions that she experienced as a result of these conditions. (A.R. 33-70.)  Plaintiff testified that her autoimmune disease caused significant pain in her back and in her joints and produced

painful sores on her face, hands, and arms, all of which contributed to her inability to work. (A.R.. 35, 44, 45, 60-61.) Plaintiff also testified to a back injury or condition, not described with any specificity, that also interfered with her ability to work, as did swelling in her legs and hands. (Id., A.R. 46.) Plaintiff stated during the course of her testimony that she had developed osteoporosis as a result of the lupus. (A.R. 67.) Plaintiff also suffered from asthma that required the use of an inhaler three days each day. (A.R. 60.) She said that she had "rebroke" her back but was unable to provide any comprehensible details to the ALJ about this condition. (A.R. 69.) However, Plaintiff assured him that the information he sought was in the medical records that he had. (Id.) Plaintiff said she was awaiting receipt of a back brace. (Id.) Plaintiff testified that the pain was "real bad," was continuous, and rendered her unable to lift and carry anything heavier than a few pounds and interfered with her ability to reach and grasp. (A.R. 32, 57, 60, 62, 65, 66.) The pain got worse with sitting and apparently and left her unable to stand for more than ten minutes. (A.R. 56.) She had difficulty walking more than a block. (Id.) Plaintiff said she took medication regularly throughout the day to manage the pain ("nothing seems to really help here lately"- A.R. 68) as well as medication prescribed to treat other symptoms of her autoimmune disorder. Plaintiff believed that overall she was getting worse. (Id.) Plaintiff testified that her autoimmune disease was not under control at that time (A.R. 65) and that she experienced "flare ups" of the lupus about once a month during which her pain worsened (A.R. 70). Plaintiff also testified that the duration of these flare-ups was "getting better and better" but the sores that developed during the course of a flare-up usually took a week to resolve. (Id.) Plaintiff's testimony showed that she lived alone, received no in-home care or supportive services, was able to perform routine activities of daily living competently overall with minimal assistance from others. (A.R. 33-70.) She maintained a reasonable, albeit more limited, social life in which she displayed competent social skills. (Id.) There was no current evidence of significant deficits in adaptive functioning. (Id.)

In his questioning, the ALJ addressed both the medical treatment Plaintiff received and the status of the documentation of that treatment in the administrative record. The ALJ opened the hearing with a question to Plaintiff's counsel asking if counsel had taken the opportunity to review all the exhibits constituting the medical portion of the file (Exhibits 1F through 7F). (A.R. 33.) Plaintiff's counsel represented that she had, and that she had no objections to the admission of those documents into

evidence. (Id.) The ALJ also asked Plaintiff about various aspects of her medical care, including her medication; the identity of her current and previous primary medical doctor (Plaintiff volunteered that she had been seeing her current doctor for only a brief time – A.R. 52); the name and location of her medical clinics or hospitals (Kern Medical Center "KMC" and Sagebrush Medical Clinic, an affiliate of KMC); the number of times Plaintiff had seen a doctor in the previous twelve months ("probably about 20 times ... or more" – id.); the length of time Plaintiff had seen her previous doctor; the last time Plaintiff had seen a doctor ("just .. a couple of weeks ago" and "a couple of days ago [when she] had a 'nerve study' done" – A.R. 53); what, if any, restrictions these doctors recommended regarding her physical activities; the number of times Plaintiff had been seen in an emergency room in the last twelve months ("a couple of times" – A.R. 54); the number of times she had been hospitalized overnight as an inpatient during the previous twelve months ("twice" – id.); and whether Plaintiff was currently seeing any type of mental health professional ("no" – id.). After this series of questions regarding the medical care Plaintiff had sought and received for her conditions, which followed one after the other, the ALJ then explicitly asked Plaintiff, "To your knowledge, do we have all the medical records?" (Id.) Plaintiff answered, "Yes, sir." (Id.) The ALJ next asked Plaintiff's attorney, "Counsel, to your knowledge, do we have all the medical records?" (Id.) Counsel's response was "Yes, Your Honor." (Id.)

After answering the series of questions posed to Plaintiff by her counsel, the ALJ asked Plaintiff if there was anything else about her condition that neither she nor her attorney had gone over with her. (A.R. 68.) Plaintiff answered, "no," and represented that she believed everything necessary had been covered. (Id.) After a brief discussion off the record, the hearing reconvened and Plaintiff testified that she did not know if her attorney was aware that Plaintiff's "back was rebroke again and that [Plaintiff was] getting a brace for it." (A.R. 68-69.) The ALJ asked Plaintiff again if he had the medical records in the case file regarding that injury or deteriorating condition. Independent of each other, both Plaintiff and Plaintiff's counsel assured the ALJ that those records were contained in the case file. (A.R. 69.) The vocational expert, Kenneth Ferra, next testified. (A.R. 71-75.)

At the close of Mr. Ferra's testimony, the ALJ finished the hearing with the following:

> ALJ: All right, with that we'll go ahead and close the case. This will be helpful to me there being no further medicals as I understand it. Is that correct, counsel?

4

1       ATTY:      Yes, Your Honor.

2       ALJ:      All right.

3 (A.R. 75-76.)

4     Medical records contained in the case file date from February 3, 2004 through September 8, 2005; they are marked as Exhibit 6F. (A.R. 205-241.) As mentioned earlier, the administrative hearing took place on March 5, 2007. The administrative record shows no augmentation of the medical case records after the close of the administrative hearing and before the decision of the administrative law judge was issued. (A.R. 3-243.) No additional evidence was submitted with Plaintiff's request for review of the hearing decision although the notice of decision and the request for review clearly advise Plaintiff of the opportunity to submit new and/or additional evidence. (A.R. 6, 8.)

## LEGAL AND REGULATORY FRAMEWORK

In order to qualify for benefits, a claimant must establish that s/he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 1382c(a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that the claimant is not only unable to do the claimant's previous work, but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); Quang v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden of establishing such a disability is initially on the claimant, who must prove that s/he is unable to return to his or her former work; the burden then shifts to the Commissioner to identify other jobs that the claimant is capable of performing considering the claimant's residual functional capacity, as well as the claimant's age, education and last fifteen years of work experience. Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations that contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. § 404.1520 (a)-(g). These steps are: (1) whether the applicant engaged in substantial gainful activity since the alleged date of the onset of the impairment; (2) whether solely on the basis of the medical evidence the impairment is severe, that is, of a magnitude sufficient to limit significantly the person's physical or mental ability

to do basic work activities; (3) whether solely on the basis of medical evidence the impairment, or combination of impairments, equals or exceeds in severity certain impairments described in Appendix I of the regulations; (4) whether the claimant has sufficient residual functional capacity, defined as what the individual can still do despite limitations, to perform the claimant's past work; and (5) if the individual no longer has the capacity to do his or her past work, whether on the basis of the claimant's age, education, work experience, and residual functional capacity, the claimant can perform any other gainful and substantial work within the national economy.

The initial burden of proof rests upon a claimant to establish that s/he "is entitled to the benefits claimed under the Act." Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)(citations omitted). In terms of the five step sequential evaluation process, the Ninth Circuit has held that "[t]he burden of proof is on the claimant as to steps one to four," while at the same time noting that an ALJ's "affirmative duty to assist a claimant to develop the record . . . complicates the allocation of burdens" such that "the ALJ shares the burden at each step." Tackett v. Apfel, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999)(italics in original). The initial burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to identify other jobs that the claimant is capable of performing considering the claimant's residual functional capacity, as well as the claimant's age, education and last fifteen years of work experience and that a significant number of jobs exist in the national economy which the claimant can perform. Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984); Terry v. Sullivan, 903 F.2d at 1275.

**STANDARD AND SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a preponderance, Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. The Court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion; it

6

1   may not simply isolate a portion of the evidence that supports the decision. Robbins v. Soc. Sec,
2   Admin., 466 F.3d 880, 882 (9th Cir. 2006); Jones v. Heckler, 760 F. 2d 993, 995 (9th Cir. 1985). It is
3   immaterial that the evidence would support a finding contrary to that reached by the Commissioner; the
4   Commissioner's determination as to a factual matter will stand if supported by substantial evidence
5   because it is the Commissioner's job, not the Court's, to resolve conflicts in the evidence. Sorenson v.
6   Weinberger, 514 F.2d at 1119.

7   In weighing the evidence and making findings, the Commissioner must apply the proper legal
8   standards. Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must review the whole
9   record and uphold the Commissioner's determination that the claimant is not disabled if the
10  Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by
11  substantial evidence. See Sanchez v. Secretary of Health and Human Services, 812 F.2d 509, 510 (9th
12  Cir. 1987); Jones v. Heckler, 760 F.2d at 995.

## ALJ'S FINDINGS

14  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since
15  November 8, 2004, the date on which Plaintiff applied for SSI. (A.R. 15.) At step two, the ALJ
16  determined that Plaintiff had severe medically determinable impairments consisting of a discoid lupus,
17  chronic venous insufficiency to the feet bilaterally, asthma and depression. (Id.) At step three, the ALJ
18  found that Plaintiff did not have an impairment or combination of impairments that met or medically
19  equaled one of the impairments listed in Appendix 1, Subpart P, of 20 C.F.R., Part 404. (Id.)

20  The ALJ determined that Plaintiff had the residual functional capacity to perform light work
21  with unlimited attention, concentration, understanding and memory; unlimited vision and hearing; slight
22  limitations in reaching and gross manipulation; slight limitations in doing simple and routine tasks;
23  occasional asthma restrictions; unlimited contact with the general public, requiring only occasional
24  supervision; and slight-to-moderate pain consistent with moderate levels. (Id.) In reaching this
25  determination, the ALJ considered the evidence of record, including all Plaintiff's symptoms and the
26  extent to which those symptoms could reasonably be accepted as consistent with the objective medical
27  evidence and the other evidence, based on the requirements contained in 20 C.F.R. § 416.929 and Social
28  Security Rulings ("SSRs") 96-4p and 96-7p. (Id.) The ALJ also considered the opinion evidence in the

manner required by 20 C.F.R. § 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (Id.) In doing so, the ALJ summarized the opinions of the consultative examiners (psychiatric and medical), the State Agency physicians who did not examine or treat Plaintiff, and all the information, including diagnoses, treatment, and objective medical evidence, contained in the KMC medical records from Plaintiff's treating physicians. (A.R. 12-15.) The ALJ analyzed this information and explained his interpretation of that evidence; identified the sources and opinions upon which he relied; identified those opinions of Plaintiff's treating physicians with which he disagreed and gave legally adequate explanations for that disagreement; explained his reasons and identified the evidence for his conclusion that some of Plaintiff's alleged disabling conditions, or the degree of impairment she claimed, were not supported by the medical record; and articulated and made findings accordingly. (A.R. 12-16.)

The ALJ's residual functional capacity assessment included a consideration of the alleged impacts of Plaintiff's symptoms on her functional abilities. (A.R. 15-17.) The ALJ concluded, after considering the evidence before him, that Plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms she claimed to have suffered. (A.R. 16.) However, the ALJ also found that Plaintiff's statements concerning the intensity, persistence and limited effects of those symptoms were not entirely credible. (Id.) He did so after thoroughly describing those symptoms and other alleged limitations, as well as the physical manifestations and functional impacts of those symptoms and limitations. The ALJ explained the various bases of the rationale he used in determining the degree to which these various subjective complaints could be considered credible and pointed to the specific pieces of evidence that underpinned his reasoning, including its consistency with objective medical findings and medical opinions, her levels of adaptive functioning as demonstrated by her capacity to perform her activities of daily living without assistance and her overall social functioning competencies. The ALJ also discussed Plaintiff's lack of treatment for some of the impairments alleged to be disabling as well as a number of significant inconsistencies in Plaintiff's statements to various health care professionals and others about the existence and/or severity of her alleged complaints and their functional impacts during the period in question. (A.R. 16-17.)

At step four, the ALJ found that Plaintiff was capable of performing past relevant work as a cashier and a deli helper and that such work did not require the performance of work-related activities

precluded by her residual functional capacity. (A.R. 17.) The ALJ compared Plaintiff's residual functional capacity with the physical and mental demands of that work and found Plaintiff capable of performing it as it is generally performed. (Id.) Consequently, the ALJ concluded that Plaintiff has not been disabled, as defined in the Act, since November 8, 2004. (A.R. 18.)

**ISSUE**

Plaintiff raises only on issue in this appeal. She maintains that the ALJ's non-disability conclusion is impermissibly flawed because the ALJ failed to consider important medical evidence from health care provider KMC about Plaintiff's various conditions and related impairments. Plaintiff acknowledges that the missing information (i.e., any KMC records dated after September 8, 2005) was not contained in the case record. The contents of those allegedly omitted records are not otherwise described with any particularity in her brief. However, Plaintiff argues that aspects of her testimony demonstrated that she had been treated and tested medical treatment at Kern Medical Center within the twelve months prior to the date of the administrative hearing and that records from this more recent medical care were not before the ALJ when he rendered his decision. Based on these contentions, Plaintiff maintains that the ALJ failed to comply with his legal obligation to fully and fairly develop the record insofar as he failed to supplement an incomplete medical record. According to Plaintiff, that failure constituted reversible error. Plaintiff's Opening Brief at 11:4-14.

As discussed supra, this Court must uphold the Commissioner's determination that a claimant is not disabled unless it contains legal error or is not supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

**DISCUSSION**

Simply put, Plaintiff's argument is not persuasive. It is certainly true that in Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001); Brown v. Heckler, 713 F.2d 441, 443 (9th Cir.1983). The duty to develop the record further is triggered in limited circumstances, including where the evidence is ambiguous or the record is inadequate to allow for proper evaluation of the evidence. Tonapetyan v. Halter, 242 F.3d at 1150. Plaintiff argues here that the absence of that portion of her medical records

corroborating her testimony about having been treated at the KMC emergency room twice in the previous twelve months and having recently undergone a nerve study created the requisite ambiguity triggering the ALJ's duty to probe more fully into the condition of the medical record.

The Court cannot agree with that characterization, given the facts of this case. At the outset of the hearing, before any testimony began, the ALJ asked Plaintiff's counsel if she had the opportunity to review all the exhibits which constituted the medical portion of the file. Plaintiff's counsel said she had and that she had no objections to the admission of those exhibits. On two separate points during Plaintiff's testimony, the ALJ specifically asked both Plaintiff and her counsel about the completeness of the medical records. Each time, the ALJ was assured by both Plaintiff and counsel, independent of each other, that the medical records documenting Plaintiff's treatment history were all there, that the medical case history records were complete. Immediately before closing the hearing, the ALJ restated his understanding that there were no further medical records and asked Plaintiff's counsel if his understanding was correct. She stated that it was. Given these repeated assurances by counsel for Plaintiff and by Plaintiff that all the necessary documentation had been produced and made available, the ALJ could reasonably conclude that the medical record was complete. The fact that Plaintiff testified to receiving medical care at KMC not contained in the case's medical records did not necessarily create ambiguity. It was reasonable for the ALJ to infer from the representations about the completeness of the medical record that Plaintiff's statements about treatment not described in the records in the case file were simply not credible. (An ALJ is entitled to draw inferences logically flowing from the evidence. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).)

Plaintiff cites the Court to Webb v. Barnhart, 433 F.3d 683 (9th Cir. 2005) as authority for her position that the ALJ had an affirmative duty to supplement Plaintiff's medical record. Webb is inapposite. There, the ALJ concluded that the claimant had no medically determinable severe impairment at step two of the sequential evaluation process despite objective medical evidence demonstrating physical impairments during the relevant period and other evidence showing that claimant's health underwent periods of improvement and worsening in this same time frame. The Webb court concluded that the ALJ's finding of "not disabled" at step two was error because the medical evidence did not clearly establish the absence of a medically severe impairment or combination of

10

impairments. "The ALJ had an affirmative duty to supplement Webb's medical record, to the extent that it was incomplete, before rejecting Webb's petition *at so early a stage in the analysis*" (emphasis added). Webb v. Barnhart, 433 F.3d at 687. Unlike Mr. Webb, the ALJ in this case found Plaintiff to have severe medically determinable impairments and proceeded to further consider and analyze the merits of her disability claim throughout the remaining applicable steps of the sequential evaluation process. Moreover, the state of the medical evidence in this case was represented by Plaintiff to be longitudinally complete, capturing all the medical records relevant to the period in question. That was certainly not so in Webb.

Plaintiff also argues that the consultative examiner's report of April 7, 2005 should have been too "stale" to be considered reliable in view of Plaintiff's testimony at the hearing that her symptoms had worsened and her functional capacities deteriorated. But Plaintiff did not produce objective medical evidence documenting any further deterioration such that the reliability of the consultative examiner's conclusions was called into question. Moreover, had Plaintiff thought that the report was outdated and no longer accurate, Plaintiff could have asked the ALJ to consider ordering a further consultative examination. She did not do so. And, finally, the ALJ was free to discount the credibility of Plaintiff's testimony about her symptomatology and her treatment efforts.[2] Finding Plaintiff less than entirely credible about these issues would permit the ALJ to conclude that the consultative examiner's April 2005 report was still useful.

It was the Plaintiff's burden included to produce full and complete medical records, not the Commissioner's. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999). While the ALJ may have a duty to assist in the production of those records under certain circumstances, that obligation was not triggered here. The state of the medical evidence was not understood by anyone at the hearing to be incomplete, and, consequently, it cannot be considered to have been ambiguous for that reason, contrary to Plaintiff's contention. Moreover, excusing compliance with Plaintiff's burden of production of evidence in order to avoid a manifest injustice is unnecessary here given these facts: Plaintiff was represented by legal counsel at the March 2007 hearing; Plaintiff had been represented in the administrative proceedings by that same attorney since November 1, 2005; Plaintiff and Plaintiff's

---

[2] Plaintiff has not challenged the ALJ's findings regarding the credibility of her subjective complaints.

11

counsel repeatedly assured the hearing officer that he had all relevant medical records; and Plaintiff's counsel asked the Appeals Council to review the decision of the ALJ without submitting any additional evidence (i.e., the alleged omitted medical records).

Under these circumstances, the evidence before the ALJ was neither ambiguous nor inadequate to allow for proper evaluation and adequate decision-making. Consequently, the ALJ's did not fail in any duty he might otherwise have had to more fully develop the record by seeking to obtain any additional medical records pertaining to Plaintiff's medical impairments.

## **CONCLUSION**

Based on the foregoing, the Court concludes that the ALJ's decision was supported by substantial evidence in the record as a whole and was based on the application of correct legal standards.

Accordingly, the Court AFFIRMS the administrative decision of the Defendant Commissioner of Social Security and DENIES Plaintiff's Social Security complaint.

The Clerk of the Court is DIRECTED to enter judgment for Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Janie Bertrand.

IT IS SO ORDERED.

Dated: **September 22, 2009**          **/s/ Dennis L. Beck**
                                        UNITED STATES MAGISTRATE JUDGE